IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LONNIE KENNARD,

    Petitioner,

vs.

SCOTT KERNAN, Warden,

    Respondent.

       /

No. CIV S- 05-2023 FCD GGH P

FINDINGS AND RECOMMENDATIONS

Introduction

    Petitioner, a state prisoner proceeding pro se, has filed a petition pursuant to 28 U.S.C. § 2254. Petitioner proceeds on an original petition, challenging his conviction in a prison disciplinary action for possession of a methamphetamine in his cell. Petitioner is currently housed at California State Prison - Sacramento (CSP-Sac), and although the disciplinary action he challenges took place at CSP-Lancaster, and the petition was filed in September, 2005 in the Central District, it was thereafter transferred and filed in this court on October 6, 2005. See Docket Entry # 1. Petitioner contends that prison officials discovered a controlled substance in a cell occupied by petitioner and another inmate on the other inmate's bunk and that even after the cellmate admitted the drugs were his, petitioner was nevertheless adjudged guilty of possession, after being denied his due process rights at the hearing and assessed a loss of 150 days of good

time/work time credit. Petition, p. 12. Specifically, petitioner alleges that he was denied the right to present his only defense to the charge, was not permitted to call defense witnesses or to confront the accusing officer and was "reduced to simply denying the allegation." Id.

In the answer, respondent concedes that petitioner exhausted his state court remedies, but asserts as an affirmative defense that the petition was untimely as not filed within the AEDPA time limits. Answer, p. 2. Respondent goes on to argue that at the disciplinary hearing held on September 14, 2001, petitioner's cellmate was called as a witness and denied any involvement, at which point petitioner was found guilty. Id. at 3. Thereafter, the cellmate confessed his guilt and claimed that only he was responsible for the methamphetamine found in the cell. Id. Nevertheless, prison officials found that the decision in petitioner's case should stand as the drugs were not carefully concealed and, under state law, petitioner was responsible for drugs being in his cell. Id. Petitioner did not file a reply/traverse.

Statute of Limitations

The statute of limitations for federal habeas corpus petitions is set forth in 28 U.S.C. § 2244(d)(1):

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

On September 14, 2001, petitioner was found guilty of possession of methamphetamine in his cell. Answer, p. 4, Exhibit (Ex.) B. Respondent maintains that the final administrative remedy petitioner sought was completed on December 23, 2001. Answer, p. 4, Ex. C. Petitioner's petition for writ of habeas corpus was filed in the state supreme court on June 9, 2005, and was denied on June 22, 2005. Answer, p. 4, Ex. C. The court notes that the petition was stamped as received on May 31, 2005, but separately stamped as filed on June 9, 2005. The petition's proof of service is signed and dated May 25, 2005, although the petition itself, contradictorily, is dated as signed by the petitioner on June 2, 2005. Pursuant to Houston v. Lack, 487 U.S. 266, 275-76, 108 S. Ct. 2379, 2385 (1988), a pro se prisoner filing is dated from the date the prisoner delivers it to prison authorities. See also, Stillman v. Lamarque, 319 F.3d 1199, 1201 (9th Cir. 2003) (mailbox rule applies to pro se prisoner who delivers habeas petition to prison officials for the court within limitations period). The court will apply the mailbox rule (even though it appears that petitioner did not deliver the petition within the limitations period) and deem the petition to the California State Supreme Court as filed on May 25, 2005. Thus, respondent contends that petitioner waited more than three years to pursue his state court remedies after the statute began to run, and is therefore barred by Evans v. Chavis, 546 U.S. 189, 126 S. Ct. 846, 849 (2006), from proceeding. Answer, p. 4.

The court's review of respondent's Ex. C, pp. 23-25, demonstrates that in exhibits to his state supreme court petition, petitioner attached, inter alia, a partial grant in a first level appeal response, insofar as an investigation was conducted, that is dated December 20, 2001, and stamped December 23, 2001. However, Ex. C, pp. 21-22, also contains at least part of a second level appeal response that is dated March 28, 2002 (and stamped variously March 13, March 15 and March 29 of 2002), indicating again that the appeal is a partial grant, but only to the extent that an investigation was conducted as a result of petitioner's administrative appeal. Although petitioner submits no record of a further administrative appeal, i.e., to the third or director's level, petitioner avers in his state supreme court petition that he exhausted all of his administrative

1  remedies. Ex. C, p. 7. However, not even a date is provided for a third level appeal response,
2  even assuming there was one, nor is there a document showing any appeal response beyond the
3  partial, second level appeal response, signed and dated March 28, 2002, which particular
4  response respondent does not reference or acknowledge. Respondent's Ex. D, a supplement to
5  the answer, filed on 2/28/06, five days after the answer, is a declaration by Linda Young,
6  Litigation Coordinator at CSP-Sac, wherein she avers that petitioner's final administrative appeal
7  was to the second level and was completed on Dec. 23, 2001, but as puzzling as the documents
8  noted above, the documents she attaches appear to be a duplicate of a partially granted first, not
9  second, level response dated Dec. 23, 2001, with no explanation of why a second level appeal
10 response, also attached is variously date-stamped March 13, 2002, March 15, 2002, and March
11 29, 2002. Also, petitioner states in his petition before this court that he filed a petition in the Los
12 Angeles County Superior Court claiming due process violations at the prison disciplinary hearing
13 challenged herein, but he fails to provide the filing date, noting only that it was denied on
14 January 15, 2004, but providing no supporting documentation either for the filing of the petition
15 or its denial. Moreover, his reference to his state supreme court petition and denial contains no
16 dates at all in the instant petition.

17        Respondent, citing Shelby v. Bartlett, 391 F.3d 1061, 1065 (9th Cir. 2004),
18 perhaps inadvertently but nevertheless mistakenly, notes § 2244(d)(1)(A) as applicable to a
19 decision such as this one. Answer, p. 4. However, in the case cited, it is clear that §
20 2244(d)(1)(D) is the applicable provision for petitions that challenge administrative decisions,
21 and that "the limitation period in such cases begins to run on 'the date on which the factual
22 predicate of the claim or claims presented could have been discovered through the exercise of
23 due diligence.'" Shelby v. Bartlett, 391 F.3d at 1066, citing Redd v. McGrath, 343 F.3d 1077,
24 1082 (9th Cir. 2003). The Shelby Court noted that in Redd, a challenge to a parole board's denial
25 of an administrative appeal, it had found that the statute of limitations began running the day
26 after petitioner received notice of the Board's decision. Likewise, the Ninth Circuit applies the

1  same standard in the context of denials of administrative appeals of prison disciplinary actions.
2  Id., at 1063-1065.   In Shelby, petitioner had waited a year and a half following denial of his
3  administrative appeal before filing in federal court, altogether bypassing state court remedies.
4  Since, however, the court found the petition untimely, it did not address the question of a lack of
5  exhaustion.  Shelby, supra, at 1066 & n. 1.

6  Section 2244(d)(2) provides that the time during which a properly filed
7  application for State post-conviction or other collateral review with respect to the pertinent
8  judgment or claim is pending shall not be counted toward any period of limitation.  Even if the
9  court assumes that the statute began to run at the end of March, 2002, or a few months beyond
10 that date, rather than from December 23, 2001, as respondent would have it, petitioner makes no
11 showing whatever of when he filed his initial state superior court petition, referencing only an
12 unsupported date of denial on January 15, 2004.   Nor does petitioner provide any response to
13 respondent's contention that the AEDPA statute of limitations began to run after December 23,
14 2001.

15 In Evans v. Chavis, 546 U.S. 189, 126 S.Ct. 846 (2006), the Supreme Court held
16 that only a timely petition may statutorily toll the AEDPA's statute of limitations during gaps
17 between state court filings and that "unreasonable delays" will render a state petition untimely
18 even if the state court does not expressly find that a petition was out of time.  546 U.S. at 198-
19 200, 126 S.Ct. at 852-854.  In Chavis, the Supreme Court held that a six month delay between
20 state court filings was unreasonable and therefore could not be counted as time during which the
21 petitioner had an appeal "pending" pursuant to § 2244(d)(2).  546 U.S. at 201, 126 S.Ct. at 854.

22 Thus, even the most liberal construction the court could afford, allowing tolling
23 through January 15, 2004, when petitioner's putative state superior court petition was denied,
24 does not save the petition because petitioner did not file his state supreme court petition until
25 \\\\\
26 \\\\\

almost a year and a half later, on May 25, 2005.[1]  Thus, the instant petition, filed on September 7, 2005, was necessarily untimely filed.

The court next considers whether petitioner is entitled to equitable tolling. However, as noted, petitioner did not file a reply/traverse.  By order filed April 17, 2008, petitioner was ordered to show cause, within twenty days, why his action should not be dismissed as barred by 28 U.S.C. § 2244(d)(1)(D) and to show, e.g., whether and why he might be entitled to equitable tolling.  In the order, petitioner was cautioned that a failure to respond would result in a recommendation of dismissal.  The twenty day period has expired, and petitioner has not shown cause or otherwise responded to the court's order.

A habeas petitioner bears the burden of proving that equitable tolling should apply to avoid dismissal of an untimely petition.  Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002).  Equitable tolling is available "only if *extraordinary* circumstances beyond a prisoner's control make it impossible to file a petition on time."  Id., at 1066 (internal quotation omitted [emphasis added in Miranda]).  Petitioner's failure to file a traverse/reply to respond to the affirmative defense of untimeliness raised by respondent as well as his lack of response to the court's show cause order are omissions which fail to counter respondent's contention of statutory untimeliness and, as well, do not provide any basis for a finding by this court of any entitlement by petitioner to equitable tolling.  In addition, the failure to respond to the show cause order altogether constitutes a separate ground for dismissal.

Finally, to the extent that petitioner might have sought – had he filed any form of opposition to the affirmative defense of untimeliness raised in the answer – to evade the statute of limitations bar by asserting a claim of actual innocence, this court has at times noted in the context of the equitable tolling inquiry that the limitations period may be equitably tolled, or simply not applied, in a situation where the habeas petitioner makes a colorable demonstration of

---

[1] No representation is made by any party that a habeas petition was ever filed at the state court intermediate appellate level.  See Petition, pp. 10-11.

6

1  actual innocence.  See Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998) (intimating that the
2  AEDPA limitations period may be unconstitutional if a claim of actual innocence were at stake);
3  United States v. Zuno-Acre, 25 F. Supp. 2d 1087, 1099-1100 (C.D.Cal. 1998) (holding that there
4  is a "miscarriage of justice gateway" to non-application of the AEDPA limitations period).  Some
5  courts have suggested that dismissal of actual or legal innocence claims on grounds that they are
6  barred by the statute of limitations violates the Suspension Clause (U.S. Const. art. I, § 9, cl. 2
7  ("The Privilege of the Writ of Habeas Corpus may not be suspended, unless when in Case of
8  Rebellion or Invasion the public Safety may require it.")).  See Rodriguez v. Artuz, 990 F.Supp.
9  275, 283 (S.D.N.Y. 1998), affirmed, 161 F.3d 763 (2nd Cir. 1998) ("where no claim of actual or
10 legal innocence was raised, as long as the procedural limits on habeas leave petitioners with
11 some reasonable opportunity to have their claims heard on the merits...[there is no] suspension of
12 the writ.").  See also United States v. Zuno-Arce, 25 F.Supp.2d 1087, 1099-1100 (C.D.Cal.
13 1998).

14     The court is now persuaded by the David v. Hall, 318 F.3d 343, 347 (1st Cir. 2003),[2]
15 rationale that claims of actual innocence are required to be brought diligently the same as any
16 other claim.  Indeed, the AEDPA statute of limitations *does not even commence to run* until the
17 factual predicate for the claim could have become known with reasonable diligence.  28 U.S.C. §
18 2244(d)(1)(D).  It becomes absurd to think that one who knows, or should know, of a claim for
19 actual innocence may pocket the claim, and only spring it years or decades after the fact.  In
20 essence, a suspension or ignoring of the AEDPA statute of limitations is not necessary for claims
21 of actual innocence.  Thus, if in the exercise of reasonable diligence, the factual predicate relating

---

[2] "Nothing is changed here by David's claim of actual innocence, a claim itself derived from his mistaken-colloquy argument.  In general, defendants who may be innocent are constrained by the same explicit statutory or rule-based deadlines as those against whom the evidence is overwhelming: pre-trial motions must be filed on time, timely appeals must be lodged, and habeas claims must conform to AEDPA.  In particular, the statutory one-year limit on filing initial habeas petitions is not mitigated by any statutory exception for actual innocence even though Congress clearly knew how to provide such an escape hatch."  David v. Hall, 318 F.3d at 347.

to the alleged recantation could not have been known to petitioner at a time that would qualify him to proceed, the statute of limitations issue is to be resolved by reference to § 2244(d)(1)(D); i.e., it never commenced to run until petitioner had knowledge of the factual predicate, or reasonably should have had such knowledge.  If, on the other hand, petitioner had knowledge of the factual predicate years ago, or should have had such knowledge years ago, his lack of diligence precludes him (and *should* preclude him) from proceeding at present.  Congress anticipated *newly discovered* actual innocence claims and provided for such in the AEDPA limitations statute itself.  The petition should be dismissed.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be dismissed as untimely.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 06/03/08

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
kenn2023.fr